**UNTIED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

CYNTHIA SUE MARY, ET AL.                CIVIL ACTION NO. 13-2195

VERSUS                                  JUDGE S. MAURICE HICKS, JR.

QEP ENERGY COMPANY                      MAGISTRATE JUDGE MCCLUSKY

**MEMORANDUM RULING**

Before the Court is a Re-urged Motion for Partial Summary Judgment filed by Defendant QEP Energy Company ("QEP"). See Record Document 136. Plaintiffs Cynthia Sue Mary and Paul's Land Company, L.L.C. ("the Marys") have filed an Opposition to QEP's Re-urged Motion for Summary Judgment and a Cross-Motion for Partial Summary Judgment. See Record Document 139. In response to the Marys' filing, QEP has filed a Motion to Strike, or in the Alternative, for Partial Summary Judgment Dismissing the Claims of Plaintiff That Were Not Previously Asserted. See Record Document 141. For the reasons set forth below, both QEP's Motion to Strike and its Re-urged Motion for Partial Summary Judgment are hereby **GRANTED**. The Marys' Cross-Motion for Partial Summary Judgment is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit centering on misplaced pipelines has returned on remand from the Fifth Circuit. See Record Document 133. Finding no competent evidence of bad faith by QEP, this Court granted QEP's Motion for Partial Summary Judgment on the issue of disgorgement of profits. See Record Document 125. However, the Fifth Circuit found the Court erred in equating a pipeline to an encroaching building and holding article 670 of the Louisiana Civil Code as the appropriate standard to measure bad faith. See Record

Document 133 at 4. The Fifth Circuit instructed the Court to "determine whether QEP's intrusion into Plaintiff's land sounds in trespass, in accession, or in some other provision of Louisiana law. It should then apply the relevant definition of bad faith (if the applicable cause of action requires such a showing) and decide whether Plaintiffs are entitled to a disgorgement of profits." Id.

The factual background of this suit remains unchanged since its first iteration before the Court. In 2006, Cynthia Sue and Paul E. Mary, III entered into separate oil and gas leases with Whitmar Exploration Company ("Whitmar") granting Whitmar the right to explore for and develop oil and gas, and to conduct the operations reasonably incidental thereto. See Record Document 49-4. The leases also granted Whitmar "the use of the surface and a right-of-way for the collection of geological and geophysical data, the drilling of core samples, the installation of lease roads, the drilling and completion of oil and gas production wells, the laying of pipelines… to produce, save and deliver to market the oil and gas products produced from the leasehold premises." Id. at 1. In 2007, Whitmar assigned its rights to QEP. See Record Document 1-3 at 2. The Marys and QEP entered into numerous agreements over the next several years permitting QEP to conduct additional operations on the Marys' land in exchange for sizable payments. See Record Documents 49-6; 49-7; 49-8; 49-9; 49-10. In 2011, Paul E. Mary, III transferred his interest to Paul's Land Company, L.L.C. See Record Document 1-3 at 3.

On July 22 and 26, 2011, the Marys entered into an additional Pipeline Servitude Agreement (the "Pedro Servitude") granting QEP the ability to install pipelines connecting the Marys' property to the Pedro Wells on a neighboring plot. See Record Document 49-11. However, the gas pipeline "cut the corner" of the Pedro Servitude, running for a

distance of approximately thirty-one (31) feet outside designated boundaries. <u>See</u> Record Document 49-12. Additionally, the saltwater pipeline deviated from the Pedro Servitude by approximately fifteen (15) feet. <u>See id.</u> These misplacements are the center of this dispute.

While the Court's ruling was on appeal, QEP and the Marys agreed to settle all claims other than the instant claim for disgorgement. <u>See</u> Record Document 130. Following remand, Magistrate Judge Hayes held a scheduling conference permitting the parties to re-urge their prior motions for partial summary judgment on the issue and file additional briefing by June 10, 2020. <u>See</u> Record Document 135. QEP did so on this deadline, filing a brief that largely mirrors its previous. <u>See</u> Record Document 136. The Marys did not re-urge their motion until June 25, 2020 and included several new arguments that had not previously been made. <u>See</u> Record Document 139. The Marys supported these additions by arguing QEP's re-urged motion should be treated as a new motion for summary judgment, thus entitling them to the presentation and consideration of new evidence. <u>See</u> Record Document 139-1 at 1-2.

**LAW AND ANALYSIS**

In its remand order, the Fifth Circuit cited to <u>Aertker v. Placid Holding Co.</u> for the proper procedure to follow in reevaluating the parties' arguments for disgorgement. <u>See</u> Record Document 133 at 4. The district court in <u>Aertker</u> was faced with arguments of prescription for certain claims resulting from a pipeline ownership dispute. <u>See</u> 874 F. Supp.2d 585, 586 (M.D. La. 2012). In determining the viability of these claims, the district court recognized it needed to take several chronological steps—(1) identify the nature of the causes of action asserted in the complaint, (2) determine the applicable prescriptive

period with respect to each cause of action, and (3) determine whether those periods accrued. See id. at 589. The Court will follow this approach. First, it will determine the causes of action asserted in the Marys' complaint. Second, it will determine the applicable standard of bad faith for those causes of action, if one exists. Finally, it will evaluate QEP's conduct in light of these standards to determine whether a claim for disgorgement is cognizable.[1] Prior to this, however, the Court must first address the aspects of the Marys' filing that QEP argues do not encompass the Fifth Circuit's mandate.

## I.      Motion to Strike

QEP argues the Marys' filing is untimely and goes beyond the remand's purview and Magistrate Judge Hayes' instructions. Consequently, they move to strike any portions of the Marys' brief referring to new matters that were not part of the Marys' earlier cross-motion for partial summary judgment, as well as any new claims pertaining to disgorgement of profits from the Mary Well or the fair rental value of the pipelines servicing either well. See Record Document 141. To the extent these new claims have been asserted, QEP points to the parties' settlement agreement which left only the claim for disgorgement of profits from the Pedro Wells to be considered. See id. The Marys' opposition focuses on claims for disgorgement or damages from the Mary Well, arguing they have been present throughout litigation and were reserved in the settlement agreement. See Record Document 146.

---

[1] The Court notes that while the Marys do enumerate specific causes of action in their complaint, disgorgement of profits is mentioned in a separate and independent paragraph without attachment to these causes of action. See Record Document 1-3 at ¶22. If the disgorgement request was attached to specific underlying claim(s), the Court likely would not need to engage in such a nuanced analysis.

While the filing's unexcused untimeliness certainly could preclude its consideration as a cross-motion for summary judgment, its contents would still remain before the Court as an opposition to QEP's re-urged motion. Because the Court is troubled by several attempted inclusions at this stage of the proceedings, it has elected to analyze QEP's merit-based arguments for striking.[2]

The Fifth Circuit's remand order and the settlement agreement of the parties strictly limit what may be considered by the Court. Because the Fifth Circuit has asked the Court only to reexamine the portion of its ruling dealing with the proper bad faith standard to apply, the Marys' attempts to reintroduce affidavits that were previously rejected by the Court must be denied. The parties' Joint Motion and Order to Dismiss states they "have settled and resolved all remaining claims asserted in Plaintiffs' complaint, subject only to Plaintiffs' reservation of their right to appeal the Trial Court's Memorandum Ruling (Doc. #125) and Order (Doc. #126)." Record Document 130. The settlement agreement itself further provides that the Marys released and relieved QEP of all further claims or causes of action that could have been brought or set forth in the instant lawsuit. See Record Document 141-2 at ¶5. The Memorandum Ruling at issue only addresses disgorgement of profits or the fair rental value of the Pedro Wells. See Record Document 125. This alone is enough for the Court to grant QEP's motion to strike, as only this claim was at issue and all other claims were settled by the parties.

Nevertheless, the Marys argue these claims have been present all along and cite to several docketed filings for this proposition. See Record Document 146. An

---

[2] Particularly shocking to the Court is the Marys' blatant attempt to add language to the settlement agreement in order to fundamentally change its meaning and argue certain claims may still be raised. See Record Document 147 at 3. The Court is quite disturbed by this lack of candor.

examination of these docketed items shows this is not true. The Marys' initial complaint prays for disgorgement of profits, or, alternatively, for the fair rental value from the pipelines serving the Pedro Wells. See Record Document 1-3 at ¶22. It makes no mention of the Mary Well as the basis for these claims. The Marys' opposition memorandum to QEP's first motion for partial summary judgment on this issue vaguely states that the Marys seek "disgorgement of QEP's profits from its unlawful use of their property." Record Document 69-36 at 2. However, the brief refers only to misplacement of the pipelines servicing the Pedro Well. See id. The remaining citations are to filings after the Court's Memorandum Ruling and the parties' settlement agreement, and thus do not support the Marys' argument.[3]

QEP's Motion to Strike (Record Document 141) is hereby **GRANTED**. While significant sections of the Marys' brief must be stricken, the sections addressing the appropriate causes of action that could lead to disgorgement of profits from the Pedro Well will be considered by the Court.

## II.    Cross-Motions for Partial Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). All facts and inferences considered pursuant to

---

[3] For example, the Marys do state that they seek disgorgement of QEP's profits from both the Mary Well and the Pedro Wells in their brief to the Fifth Circuit. See Record Document 146-1. However, this does not support their argument that this claim has been present from the onset of litigation. Additionally, it is axiomatic that new claims may not be introduced on appeal.

a motion for summary judgment must be construed in the light most favorable to the non-movant party. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, summary judgment cannot be defeated by conclusory allegations, unsupported assertions, or presentation of a mere scintilla of evidence. See McFaul v. Valenzuela, 684 F.3d 564, 571 (5th Cir. 2012).

In line with the Fifth Circuit's remand order, the parties have together asserted and addressed three potential causes of action that could form the basis for a disgorgement award: (1) claims for accession, (2) trespass or continued trespass, and (3) breach of the Pedro Servitude. See Record Documents 136 & 139. QEP favors breach of the Pedro Servitude as the proper cause of action, but argues disgorgement is not an available remedy for breach of contractual provisions in Louisiana. See Record Document 136-1. In the alternative, they argue the other potential avenues similarly do not lend themselves to such a remedy. See id. The Marys argue all three causes of action are present in their suit, and QEP's bad faith permits disgorgement. See Record Document 139-1. Each is examined in turn, applying the three-step procedure articulated above.[4]

## A. Accession

The section of the Court's Memorandum Ruling (Record Document 125) addressing the Marys' claims in accession is where the decision went awry. The Court held the Louisiana Civil Code's articles on accession were inapplicable to the type of encroachment action asserted by the Marys. See Record Document 125 at 23. It then

---

[4] The Court notes its limited, remaining task is to determine whether the Marys have a claim for disgorgement of profits through the causes of action they assert. It need not determine whether the underlying claims themselves are viable if disgorgement is not an available remedy for these underlying claims.

applied the incorrect standard for bad faith, rejecting article 487's bad faith standard in favor of article 670. See id.

As done in Aertker, the Court must first identify the nature of the cause of action asserted in the complaint. Paragraph 20 of the Marys' Complaint outlines a cause of action in accession. See Record Document 1-3. The Marys cite to article 497 of the Civil Code on rights of accession, stating that the owner of an immovable may keep constructions made by a bad faith possessor or demand their destruction and removal. The owner is entitled to make an election between these remedies, and the Marys recognized this right in asking QEP for a detailed accounting of the construction costs of the pipelines in order to "make an intelligent election." Record Document 1-3 at ¶20.

By its terms, article 497 established the available remedy of an election between retaining the pipelines or requiring their removal at the expense of the bad faith possessor. See La. Civ. Code art. 497. Disgorgement of profits is not discussed. Nevertheless, the parties analyze at great length whether QEP qualifies as a possessor in bad faith under article 486. This provision underlies the Marys' claims for disgorgement and states:

> A possessor in good faith acquires the ownership of fruits he has gathered. If he is evicted by the owner, he is entitled to reimbursement of expenses for fruits he was unable to gather.
>
> A possessor in bad faith is bound to restore to the owner the fruits he has gathered, or their value, subject to his claim for reimbursement of expenses.

La Civ. Code art. 486. A definition of good faith is provided in the subsequent article, which provides "a possessor is in good faith when he possessed by virtue of an act translative of ownership and does not know of any defects in his ownership. He ceases to be in good faith when these defects are made known to him or an action is instituted

against him by the owner for the recovery of the thing." La. Civ. Code art. 487. While this standard is the correct one for the Court to apply to a claim under the articles of accession, the Court need not delve into whether QEP qualifies as a bad faith possessor because disgorgement is not available under the circumstances of the present controversy.[5]

First, the gas extracted from the Pedro Wells through the Marys' property is not a "fruit" under Louisiana law. Comment (c) to article 551 of the Civil Code expressly provides that "Mineral substances extracted from the ground and the proceeds of mineral rights are not fruits, because their production results in depletion of property." La. Civ. Code art. 551 (citing La. Mineral Code arts. 188-196). Second, the so-called fruits from which the Marys seek profit derive from the neighboring Pedro Wells and not their own land. The Marys cannot claim to be owners by accession of the extracts from neighboring land. Finally, as QEP emphasizes, to the extent the Marys claim for disgorgement stems from the profits of the segment of misplaced pipeline on their land, they have failed to show any additional profit QEP realized as a result of the misplacement of these pipelines. See Record Document 125 at 22; Record Document 49-3 at ¶19.

In sum, the Marys asserted a cause of action under the principles of accession in their complaint, specifically citing to article 497 and its remedy of retention or removal of the misplaced pipelines at QEP's expense. See Record Document 1-3 at ¶20. While the parties' briefs address the standard for good faith—and by its absence, bad faith—under the principles of accession, these articles could not lead to an award of disgorgement of

---

[5] As stated, the Court must determine whether the Marys have a claim for disgorgement of profits through the principles of accession. As a result of the parties' settlement agreement, it is no longer necessary to determine whether claims in accession themselves are available if disgorgement is not a viable remedy, and thus, the Court elects not to dive further into the complexities of this cause of action.

profits from the Pedro Wells even if QEP were to be considered a bad faith possessor. As a result, the Marys' claims for this remedy under a theory of accession must be rejected.

### B. Trespass and Continuing Trespass

The Marys' complaint outlines a claim for continuing trespass resulting from the misplaced pipelines. See Record Document 1-3 at ¶21. In its Memorandum Ruling, the Court relied upon its prior decision in SGC Land, a case involving strikingly similar facts, in holding QEP's misplacement did not constitute a trespass. See Record Document 125 at 23; SGC Land, LLC v. Louisiana Midstream Gas Services, 939 F. Supp.2d 612 (W.D. La. Mar. 28, 2013). Thus, no remedies, including disgorgement, were available to the Marys. See id. While the Court still believes SGC Land's guidance on the inappropriateness of civil trespass as a cause of action is instructive,[6] the Court is not tasked with determining whether such a claim is cognizable; rather, it must determine the availability of a disgorgement award from a trespass or continuing trespass.

In contrast to those articles addressing accession, Louisiana tort law on trespass does not neatly define good or bad faith. However, Louisiana courts have analogized and applied the provisions of the Civil Code on contractual damages to tort cases, including article 1997 pertaining to bad faith obligors. See LeBlanc v. Pynes, 46,393 (La. App. 2 Cir. 7/13/11), 69 So.3d 1273, 1284. Article 1997 defines "bad faith" as an obligor that intentionally and maliciously fails to perform his obligation. See La. Civ. Code art. 1997.

---

[6] The Fifth Circuit took issue with the Court's reliance upon SGC Land, but only to the extent that decision equated a building to a pipeline and applied article 670 on encroachment to the controversy. See Record Document 133.

Louisiana courts have interpreted obligor bad faith to constitute "more than mere bad judgment or negligence and it implies the conscious doing of a wrong for dishonest or morally questionable motives." Volentine v. Raeford Farms of Louisiana, LLC, 50,698 (La. App. 2 Cir. 8/15/16), 201 So.3d 325, 338.

Applying this standard, the Court finds the Marys' have failed to produce evidence demonstrating QEP's misplacements were done in bad faith. The Marys have failed to show QEP had any financial incentive to misplace the pipeline. See id. at 21. They have also failed to demonstrate QEP achieved any additional profit from these new locations. See id; Record Document 49-3 at 5. To the contrary, the various agreements between QEP and the Marys over the course of their lengthy relationship demonstrate a cautious approach to the Marys' property. Multiple times, QEP ensured it obtained rights beyond the initial leases to engage in further conduct, often at great cost to themselves. See Record Document 125 at 22. Considering this evidence, QEP's actions cannot meet the applicable standard of bad faith.

Even if QEP were found to exemplify this standard of bad faith, disgorgement is not an available remedy under Louisiana tort law for trespass or continued trespass. Louisiana law has long held a tortfeasor's obligation is to place the injured party in the position he would have occupied had the injury not occurred. See Lambert v. American Box Co., 144 La. 604, 613 (1919). While the Civil Code does provide certain instances where enhanced or punitive damages are appropriate, trespass is not one of these instances. The tort of trespass makes no specific mention of disgorgement as a potential

remedy and even willful trespasses have been limited to general damages.[7] <u>See</u> <u>Ard v. Samedan Oil Corp.</u>, 483 So.2d 925, 928 (La. 1986) (lowering an award of general damages for a willful trespass after finding the trial court had abused its "much discretion").

The Court finds the Marys asserted an action for continuing trespass in their complaint. The proper bad faith standard for tort actions in Louisiana has been articulated through analogy to article 1997 of the Civil Code on contractual obligations. Applying this standard, the Marys have failed to establish a genuine dispute of material fact on the issue of whether QEP's conduct can be considered bad faith. Consequently, a claim for disgorgement of profits under this cause of action is not viable.

### C.  Breach of the Pedro Servitude

While the Marys do not explicitly claim breach of the Pedro Servitude in their complaint, several paragraphs of the pleading asserted QEP failed to abide by its terms. <u>See</u> Record Document 1-3 at ¶¶12-14. Significant sections of both parties' briefs on the issue are also devoted to this cause of action. <u>See</u> Record Documents 136 & 139. The Pedro Servitude established the precise location of the two pipelines to be built on the Marys' property to service the Pedro Wells, and it is undisputed that QEP deviated from these plans in laying the pipelines. <u>See</u> Record Document 49-11.

As has been discussed, article 1997 of the Louisiana Civil Code supplies the applicable standard for bad faith of obligors. <u>See</u> La. Civ. Code art. 1997. Applying that

---

[7] Continuing trespasses similarly refer only to successive damages as possible awards. <u>See</u> <u>Hogg</u>, 45 So.3d at 1003.

standard, the Court has found that QEP's conduct does not rise to the requisite level of bad faith and a genuine dispute of material fact does not exist on this issue.

Additionally, it does not appear that disgorgement of profits is an available remedy for mere breach of contract claims in Louisiana. The Louisiana Civil Code provides that damages for the breach of contractual obligations are measured by the loss sustained by the obligee and the profit of which he has been deprived. <u>See</u> La. Civ. Code art. 1995. Article 1995's mention of profit is done so in the context of the obligee not the obligor, and the case law on the subject of damages flowing from breach of contract similarly does not discuss disgorging an obligor of his profits. Article 1997 itself also does not state that a bad faith obligor is liable for disgorgement of profits, providing that "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." La. Civ. Code art. 1997. This contrasts with obligors in good faith, who are liable only for damages that were foreseeable at the time of contract formation. <u>See</u> La. Civ. Code art. 1996.  Together, these provisions imply that the only difference in damage awards from good and bad faith obligors is the addition of unforeseeable damages. Disgorgement does not attach.

While not explicitly asserted in the Marys' complaint, breach of the Pedro Servitude could be a proper cause of action in this matter and is discussed at length in the parties' re-urged motions. The applicable standard of bad faith is located at article 1997 of the Louisiana Civil Code; however, QEP's conduct cannot be classified as bad faith under this article. Therefore, this cause of action, as well as those rooted in the articles of accession and the tort of trespass, cannot serve as the basis for an award of disgorgement of profits. Accordingly, QEP's Re-urged Motion for Partial Summary

Judgment (Record Document 136) is hereby **GRANTED**, whereas the Marys' Cross-Motion for Partial Summary Judgment (Record Document 139) is hereby **DENIED**.

## CONCLUSION

Having determined the Fifth Circuit's Remand Order, Magistrate Judge Hayes' instructions, and the parties' settlement agreement did not permit the Marys to make new arguments in their re-urged memorandum before the Court, QEP's Motion to Strike (Record Document 141) is hereby **GRANTED**.

After following the guidance of the Fifth Circuit as to the proper procedure to follow in analyzing the Marys' claims for disgorgement of profits, the Court has determined that remedy is unavailable to the Marys under each of the asserted underlying causes of action. Accordingly, QEP's Re-urged Motion for Partial Summary Judgment (Record Document 136) is hereby **GRANTED** and the Marys' Cross-Motion for Partial Summary Judgment (Record Document 139) is hereby **DENIED**. A judgment memorializing the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 22nd day of March, 2021.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT